# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1242 | **DATE** | 1/17/2001 |
| **CASE TITLE** | Zic vs. The Italian Govt., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion for judgment on the pleading (35-1) is granted with respect to counts II, III, IV, V, VIII and IX and denied with respect to Counts VI and VII.. The motion is granted in part with respect to count I. Defendant's motion to strike Mr. Zic's first and second affirmative defenses to ENIT's counterclaim (39-1) is granted. Its motion to strike the third affirmative defense is denied as moot. ENIT's motion to strike the expert report of Stanton Herzog (38-1) is denied. Enter Memorandum Opinion and Order. This case is referred to Magistrate Judge Keys for a settlement conference

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 18 2001 date docketed | |
| | Notified counsel by telephone. | | | 58 |
| | Docketing to mail notices. | | 1S docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 1/17/2001 date mailed notice | |
| MPJ | courtroom deputy's initials | | MPJ mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CLAUDE ZIC,                                    )
                                               )
                    Plaintiff,                 )
                                               )
          v.                                   )     No. 99 C 1242
                                               )
THE ITALIAN GOVERNMENT                         )
TRAVEL OFFICE, a/k/a ENIT,                     )
a/k/a ENTE NAZIONALE ITALIANO                  )
TER IL TURISMO, d/b/a ITALIA USA,              )
MARIO FALCONE; MARINO CORONA;                  )
ARMANDO FOSCHI; AUGUSTINO PETTI;               )
GABRIELLE PALA; RUGGERO RUGGERI;               )
GUISEPPE SALVATORE; MARIO                      )
LUCCHESI, not individually but                 )
solely in his official capacity                )
as Director/Italian Travel                     )
Commissioner for the Midwestern                )
United States;                                 )
                                               )
                    Respondent.                )

## MEMORANDUM OPINION AND ORDER

In 1982, Claude Zic entered into an employment contract with the Italian Government Travel Office ("ENIT").  Mr. Zic worked for ENIT in Chicago until 1999.  He sued ENIT in Illinois state court for breach of contract, fraud and various other charges arising out of a dispute about salary and back pay.  ENIT removed the case to federal court.  ENIT moves for judgment on the pleadings, to strike Mr. Zic's affirmative defenses to ENIT's counterclaim, and to strike the report of Stanton Herzog, Mr. Zic's damages expert.

## I. Background

Mr. Zic says that he entered into an employment contract, the

Initial Employment Agreement ("IEA"), with ENIT in 1982. He was hired to provide technical support to ENIT management in its Chicago office. Mr. Zic's job performance with ENIT was satisfactory, and he continued to work for ENIT under a series of contracts until 1999. The IEA was for an indefinite period of time, but the economic terms were renewable every three years. Mr. Zic he alleges that, beginning in 1985, ENIT promised him a salary increase retroactive to 1985, even though it could not offer him a contract with those terms at that time. From 1985 to 1997, ENIT, through its employees and agents (the individual defendants), allegedly made repeated promises of retroactive salary increases, benefits and bonuses that were never realized.

In 1994, ENIT temporarily closed its Chicago office so that it could move to another location. According to the IEA, Mr. Zic's employment contract was terminated by the office closing, and he was rehired under a new contract effective March 1, 1994. Mr. Zic alleges that the office closing was fraudulent, and done only for the purpose of terminating his contract. Mr. Zic continued to work for ENIT under the 1994 contract, and under new contracts of March 1, 1997 and March 1, 1998. Mr. Zic alleges that he relied on repeated promises of retroactive pay, and that ENIT never intended to make good on its promises. Mr. Zic filed this action on January 27, 1999, but continued to work for ENIT until his contract expired in March 1999. ENIT now moves for judgment on the pleadings, and

to strike Mr. Zic's affirmative defenses and expert report.

## II. Motion for Judgment on the Pleadings

The standard of review for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as for a motion to dismiss under Rule 12(b). *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 470 n.2 (7th Cir. 1997). I accept all well-pleaded factual allegations of the plaintiff and draw all reasonable inferences in favor of the plaintiff. *Colfax Corp. v. Illinois State Toll Highway Auth.*, 79 F.3d 631, 632 (7th Cir. 1996). Dismissal is only appropriate if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Id.* Under federal notice pleading, the complaint need not allege any facts, *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998), but Fed. R. Civ. P. 9(b) imposes heightened pleading requirements where the plaintiff alleges fraud. Rule 9(b) requires that fraud be plead "with particularity."

ENIT attaches several written contracts to its motion for judgment on the pleadings that Mr. Zic referenced in his complaint. Ordinarily, a defendant may not attach factual matter to a motion to dismiss, because I assume that all of the plaintiff's factual allegations are true. *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). If documents outside the pleadings are attached to a motion to dismiss, I must exclude them or convert to motion to a motion for

3

summary judgment under Rule 56. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). However, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (contracts attached to complaint for breach of contract). I do not rely on the contracts attached by ENIT, and therefore I need not consider whether they are "central" to Mr. Zic's claim. The documents attached to ENIT's motion are specifically excluded and I will not convert the motion for judgment on the pleadings to a motion for summary judgment.

### A. Fraud Claims

Mr. Zic brings three fraud claims (fraud, fraudulent misrepresentation, and fraudulent inducement) that are essentially the same. Fraudulent misrepresentation and fraudulent inducement are simply forms of common law fraud.[1] *See Bell & Howell Fin. Servs. Co. v. St. Louis Pre-Sort, Inc.*, No. 97 C 6063, 1999 WL 965961, at *1 n.3 (N.D. Ill. Sept. 29, 1999). The factual basis for all three claims is the same: Mr. Zic alleges that ENIT promised him that it would get him retroactive back pay under a

---

[1] In Illinois, the elements of common-law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996).

future contract, but that ENIT never had an intention of following through. In Illinois, "misrepresentations of intention to perform future conduct, even if made without a present intention to perform, do not generally constitute fraud." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 682 (Ill. 1989). So-called "promissory fraud" may be actionable, however, if "the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." *Id.* (citation omitted).

Promissory fraud is a disfavored cause of action in Illinois because it is "easy to allege and difficult to prove or disprove." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992). Thus Illinois has placed a "deliberately high" burden on a plaintiff claiming promissory fraud: "In order to survive the pleading stage, a claimant must be able to point to *specific, objective manifestations of fraudulent intent*--a scheme or device." *Id.* (citing *Hollymatic Corp. v. Holly Sys., Inc.*, 620 F. Supp. 1366, 1369 (N.D. Ill. 1985)) (citations omitted) (emphasis added). Similar concerns explain the heightened fraud pleading requirements of Fed. R. Civ. P. 9(b).[2] *See Vicom, Inc. v. Harbridge Merchant*

_____

[2] After a state case is removed to federal court, the Federal Rules of Civil Procedure apply. Fed. R. Civ. P. 81(c). Repleading is not necessary unless the district court orders it. *Id.* Repleading to conform to federal rules is not necessary in this case; the federal rules for notice pleading and pleading fraud claims are more lenient than Illinois rules. *See Board of Educ. of Chicago v. A, C, and S, Inc.*, 546 N.E.2d 580, 593 (Ill. 1989). It

*Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

Mr. Zic's complaint contains lengthy allegations of promises made and unfulfilled by ENIT, and he alleges that the promises were fraudulent because ENIT never had any intention of performing. But he does not point to any "specific, objective manifestations of fraudulent intent." Objective proof of fraudulent intent is required because the mere failure to keep a promise could be caused by any number of motivations besides fraud. *See Advent Elec., Inc. v. Buckman*, 918 F. Supp. 260, 265 (N.D. Ill. 1996) ("[E]vidence [of a broken promise] is insufficient by itself to support a promissory fraud claim."). Mr. Zic does not plead any specific objective proof of fraudulent intent in his complaint; he pleads only conclusory allegations.

Fraudulent intent may be inferred, however, where the breach of promise happens so close to the promise that the only possible inference is that the promisor never intended to keep the promise. *See Pepper v. Marks*, 522 N.E.2d 688, 691 (Ill. App. Ct. 1988) (express promise broken four days later gave rise to inference of fraudulent intent). But even accepting Mr. Zic's story, there is a thirteen year gap between the first promises of back pay in 1985 and the 1998 contract, which Mr. Zic claims breached those promises a year after the last of them was made. In this case, the time

would serve no purpose in this case to order Mr. Zic to replead to comply with less demanding rules.

between promise and breach is, at a minimum, one year, and at a maximum, thirteen years. This is too long to support an inference of fraudulent intent. *See Roxford v. Ameritech Corp.*, No. 00 C 282, 2000 WL 1538661, at *2 (N.D. Ill. Oct. 17, 2000) (Zagel, J.) (two years too long to support inference of fraudulent intent); *Razdan v. General Motors Corp.*, 979 F. Supp. 755, 759 (N.D. Ill. 1997) (Moran, S.J.) ("several months" too long). Mr. Zic's fraud claims are dismissed.[3]

### B. Breach of Contract Claim

Mr. Zic also alleges breach of written contract based on the IEA in Count I of his complaint. In Count IX (requesting specific performance), he alleges that ENIT "breached its oral promises which modified the [IEA] which were made from time-to-time thereafter as well as the alleged subsequent employment agreements of March 1, 1994, March 1, 1997, and March 1, 1998." ENIT argues that Mr. Zic's claims are partially barred by the applicable statutes of limitation -- ten years for written contracts, 735 ILCS 5/13-206, and five years for oral contracts, *id.* at § 205. In response, Mr. Zic concedes that he is suing on a written contract that was orally modified, in which case the contract is subject to a five year statute of limitations. *See Armstrong v. Guigler*, 673 N.E.2d 290, 294 (Ill. 1996). It is somewhat puzzling that Mr. Zic

---

[3] Because I dismiss Mr. Zic's fraud claims for failure to state a claim for promissory fraud, I need not reach the question of whether his allegations comply with Fed. R. Civ. P. 9(b).

would argue that the applicable statute of limitations is the shorter of the two,[4] but ENIT does not oppose application of the shorter statute of limitations. The five year statute of limitations for written contracts subject to oral modification applies to Mr. Zic's claims for breach of contract.

Under Illinois law, an agent or employee who acts on behalf of a corporation in making a contract cannot be personally liable on the contract unless some evidence of contrary intent appears in the document. *Sullivan v. Cox*, 78 F.3d 322, 326 (7th Cir. 1996), *citing Wottowa Ins. Agency, Inc. v. Bock*, 472 N.E.2d 411, 413 (Ill. 1984). Mr. Zic has not alleged any contrary intent, so the individual defendants in this case are not subject to suit for breach of contract, and claims against these individuals are dismissed.[5] Mr. Zic does not object to ENIT's request that I dismiss any discrimination claims, so those claims are dismissed.

---

[4] He apparently did so in reliance on the so-called "discovery rule," which tolls the statute of limitations in cases that involve "torts arising from contract." *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135 (Ill. 1995). Because I have already determined that Mr. Zic has not stated a claim for fraud, however, there is no tort arising from the contract.

[5] Mr. Lucchesi is also dismissed because he is sued only in his official capacity and is therefore a redundant party. Where an individual is sued only in his official capacity, and the entity has notice of the claim, the claim is construed as a suit only against the entity. *See Smith v. Metropolitan Sch. Dist. Perry Township*, 128 F.3d 1014, 1021 n.3 (7th Cir. 1997).

8

## C. Civil Conspiracy Claim

Mr. Zic alleges that ENIT and the various individual defendants, who are employees of ENIT, entered into a conspiracy to defraud him. Civil conspiracy requires "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Buckner v. Atlantic Plant Maint., Inc.*, 694 N.E.2d 565, 571 (Ill. 1998). Mr. Zic does not state a claim. He alleges that the individual defendants sent a series of flattering letters on his behalf to the ENIT Home Office in Rome, seeking pay increases, bonuses, and back pay for Mr. Zic to reward him for loyal service. He alleges that the letters were sent and recommendations made "with the present knowledge and agreement between and among the parties that no such action would be taken." There is nothing unlawful about seeking benefits on someone else's behalf, even when such efforts are futile. At best, this is nothing more than the rejected promissory fraud claim dressed up as civil conspiracy. Without a fraud, there can be no conspiracy to defraud.

Moreover, even if Mr. Zic had stated a claim for a conspiracy, it would be barred by the intra-corporate immunity doctrine, under which no conspiracy can exist between a corporation and its agents. *See Buckner*, 694 N.E.2d at 571. There are two limited exceptions to the doctrine where individual agents act out of self-interest or where the corporation conspires with a third party. *See Mehl v.*

9

*Navistar Int'l Corp.*, 670 F. Supp. 239, 241 (N.D. Ill. 1987). But Mr. Zic now argues that the individual defendants acted in self-interest; but to the extent that he could be understood to allege any state of mind in his complaint, he alleges that they acted out of a desire to harm him, not to help themselves. He also now argues that his complaint alleges that the unions of the Italian government were involved in the conspiracy. In ¶ 98 of Count V, he indicates that the union confirmed what ENIT had said, that new contracts were forthcoming and that prior commitments would be recognized. This fails to allege that the unions were part of any conspiracy -- he does not allege any "combination" of ENIT and the union, nor does he identify any unlawful purpose or unlawful means. The civil conspiracy claim is dismissed.

### D. Unjust Enrichment and *Quantum Meruit*

Mr. Zic brings claims for unjust enrichment and *quantum meruit*[6] against ENIT, alleging that it benefitted unjustly from his work when it failed to pay him salary increases, benefits and bonuses. Under Illinois law, a plaintiff may not recover on a theory of quasi-contract when a real contract governs the parties' relations. *Murray v. Abt Assocs. Inc.*, 18 F.3d 1376, 1379 (7th Cir. 1994). ENIT argues that Mr. Zic should barred from seeking relief under equitable theories because "[a]t all relevant times,

---

[6] Illinois courts use the terms "unjust enrichment" and "*quantum meruit*" interchangeably with "quasi-contract." *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1114 n.7 (7th Cir. 1994).

10

a written contract governed Mr. Zic's work relationship with ENIT."
However, although Mr. Zic may not *recover* under both contract and
quasi-contract theories, he is not barred from pleading in the
alternative. *See* Fed. R. Civ. P. 8(e)(2) ("A party may also state
as many separate claims or defenses as the party has regardless of
consistency and whether based on legal [or] equitable . . .
grounds."). ENIT's motion is denied with respect to Count VI
(Unjust Enrichment) and Count VII (*Quantum Meruit*).

### E. Declaratory Judgment

ENIT argues that Mr. Zic's claim for a declaratory judgment
should be dismissed because it is redundant and merely seeks relief
for breach of contract. Existence of another adequate remedy is
not necessarily grounds for dismissal of a declaratory judgment
claim. *Mid-Town Petroleum Inc. v. Dine*, 390 N.E.2d 428, 431-32
(Ill. App. Ct. 1979). A declaratory judgment is only an
appropriate remedy, however, to determine the existing rights of
parties. *Senese v. Climatemp, Inc.*, 582 N.E.2d 1180, 1188 (Ill.
App. Ct. 1991). A declaratory judgment action "may be dismissed
where a party seeks to enforce his rights after the fact." *Id.*
Although Mr. Zic argues that he was still employed under contract
by ENIT when he filed this action, it is undisputed that he stopped
working at ENIT when that contract expired in March 1999. In a
case that involved separate actions for declaratory relief and
damages for breach of contract, another court in this district held

that dates of filing are not necessarily determinative; rather, "the relevant question is 'whether the circumstances at the time of the determination are such as to make further prosecution of [the] suit for declaratory relief useless.'" *Credit Card Enhancements, Inc. v. Stand-Buys, Ltd.*, No. 86 C 8769, 1987 WL 5928, at *3 (N.D. Ill. Jan. 23, 1987) (Kocoras, J.). Mr. Zic may have had a valid claim for a declaratory judgment when he filed this action, but he does not have a claim under an existing contract now. His declaratory judgment claim is dismissed.

### F. Specific Performance

Under Illinois, specific performance is an extraordinary remedy, and I will not grant it "where there is an adequate remedy at law, such as money damages, unless there is some element to show that the relief at law might not be adequate, such as where the measure of damages resulting from nonperformance of the agreement is uncertain or difficult to ascertain." *John O. Schofield, Inc. v. Nikkel*, 731 N.E.2d 915, 926 (Ill. App. Ct. 2000). Mr. Zic concedes that he seeks only to "force Defendants to fulfill their oral promises . . . concerning his retroactive pay." If so, he has an adequate remedy at law: breach of oral contract.[7] His claim for specific performance is dismissed.

---

[7] I have already dismissed the individual defendants from the breach of contract claim, *see infra* II.B., so Mr. Zic's cause of action for breach of oral contract lies only against ENIT.

12

III.  Motion to Strike Affirmative Defenses

ENIT also moves to strike Mr. Zic's affirmative defenses to ENIT's counterclaim.  As a general rule, motions to strike are disfavored, and "[a]ffirmative defenses will be stricken only when they are insufficient on the face of the pleadings." *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). However, "[a]ffirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure."  *Id.*   Mr. Zic's first affirmative defense is that the counterclaim is barred by the equitable doctrine of unclean hands "because Defendants . . . fraudulently invok[ed] Article 11 of the Contract by closing the ENIT Chicago office." The second affirmative defense is that ENIT's counterclaim is barred by fraud.

Fraud must be pleaded with particularity.  Fed. R. Civ. P. 9(b).  This means that the plaintiff must plead the "who, what, where, and when of the alleged fraud." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).  The second affirmative defense, which says only that the counterclaim "is barred by fraud," clearly fails to meet the particularity requirements of Rule 9(b).  The first affirmative defense also fails to satisfy Rule 9(b);[8] Mr. Zic alleges that ENIT is claiming

---

[8] Although "unclean hands" is an equitable affirmative defense that need not necessarily be plead with particularity, Mr. Zic's first affirmative defense alleges that ENIT's hands are unclean

a set-off, that ENIT closed its Chicago office, and that there was no disruption in business activity. Even drawing all inferences in favor of Mr. Zic, he has not explained how any of these actions or conditions constitutes a fraud, much less who committed it, or where or when it was committed.

Mr. Zic concedes that his first and second affirmative defenses do not allege any specifics of fraud, but he argues that he need not plead the specifics because ENIT "has been on notice of Plaintiff's allegations of fraud since the filing of the Complaint." Mr. Zic misconstrues the purpose of Rule 9(b):

> The purpose of requiring that fraud be pleaded with particularity is not . . . to give the defendant in such a case enough information to prepare his defense. A charge of fraud is no more opaque than any other charge. . . . The purpose . . . is to force the plaintiff to do more than the usual investigation before filing his complaint.

*Ackerman*, 172 F.3d at 469. Whether ENIT was on notice of the fraud claims or not, Mr. Zic has not complied with Rule 9(b), so his first and second affirmative defenses are facially insufficient.

Mr. Zic's third affirmative defense is that ENIT's counterclaim "does not state a claim upon which relief can be granted." On a motion to strike, had Mr. Zic raised a proper affirmative defense, ENIT would have the burden of showing that Mr. Zic could not prevail on its affirmative defense under any set of facts. *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th

---

because it acted "fraudulently," thus it invokes the heightened pleading requirement of Rule 9(b).

Cir. 1991). However, failure to state a claim upon which relief can be granted is not an affirmative defense under Rule 8(c); it is a Rule 12(b) defense, to be raised in a pre-answer motion or responsive pleading. Under Rule 12(b)(6), Zic has the burden of demonstrating that, as a matter of law, ENIT's counterclaim fails to state a claim. Mr. Zic cannot shift this burden simply by calling a Rule 12(b)(6) motion an "affirmative defense." Properly construed, Mr. Zic's third affirmative defense is a Rule 12(b)(6) pre-answer motion, properly brought in the response to ENIT's counterclaim. Fed. R. Civ. P. 12(h)(2). However, Mr. Zic does not support his motion, so it is denied and ENIT's motion to strike the third affirmative defenses is therefore moot.

IV.

ENIT also moves to strike the expert report of Stanton B. Herzog, Mr. Zic's damages expert, on the grounds that it is neither reliable nor helpful to the trier of fact. As of December 1, 2000, the amended Federal Rule of Evidence 702, governing the admissibility of expert testimony, reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This rule essentially codifies the principles enunciated in the

line of cases following *Daubert v. Merrill Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), requiring that expert testimony must be reliable to be admissible. What has been added to the Rule are three new "reliability" requirements: reliable data, reliable methodology, and reliable application of the methodology.

ENIT argues that Mr. Herzog's opinion would not be helpful to the trier of fact because it is not sophisticated enough. If "expert testimony would be helpful and relevant with respect to an issue in the case, [I am] not compelled to exclude the expert just because the testimony may, to a greater or lesser degree, cover matters that are within the average juror's comprehension." *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996). The gravamen of ENIT's objection is that Mr. Herzog's report contains no more than "unexplained grade school arithmetic," or simple number-crunching. Mr. Herzog's report consists of ten pages of calculations of Mr. Zic's damages with adjustments for cost of living, social security and periodic salary increases; this is not simple arithmetic. Moreover, as an accountant, Mr. Herzog has specialized knowledge that would be helpful to a jury in calculating the appropriate amount of damages.

ENIT also objects that Mr. Herzog's report is not sufficiently reliable under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Fed. R. Evid. 702, as recently amended, requires reliable data, reliable methodology, and reliable application of the

methodology. Here Mr. Herzog discloses the source materials for his report, *viz.*, the five contracts from 1982 to 1998, Mr. Zic's severance pay calculation, the Department of Labor Price Index, Social Security Tax rates as published in Tax Management, Inc. (an on-line tax service), and Mr. Zic's annual 1099 wage reports. ENIT does not argue that these sources are unreliable.

ENIT argues that Mr. Herzog's report is unreliable because he does not explain the methodology for his calculations. Mr. Herzog's methodology consists of the same calculations that ENIT called "grade school arithmetic," which is certainly reliable.[9] Where parties offer expert testimony on damages, the methodologies used by the expert "need not be intellectually sophisticated but must not insult the intelligence." *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992). The mathematical calculations used by Mr. Herzog adjust Mr. Zic's earnings for cost-of-living increases, social security taxes, and periodic salary increases. Although these calculations employ percentages, hardly an "intellectually sophisticated" concept, they are not insulting to the intelligence of the average juror.

ENIT also objects to Mr. Herzog's application of the methodology because it argues that the report contains conflicting

---

[9] Of course, as I have already explained, Mr. Herzog's calculations are not simple grade-school arithmetic. In calling them that, however, ENIT essentially concedes that they are reliable, and I have been given no reason to think otherwise.

assumptions. Mr. Herzog assumes generally that "[t]here were no alterations in the contracts approved by the parties, other than the above contracts." In his "Computation of Damages Under 1982 [C]ontract Using 1998 Economic Table," Mr. Herzog assumes that "[t]he economic terms of the 1998 contract were retroactive to the 1982 contract." There is no patent conflict between these two assumptions; it is possible that the 1998 contract explicitly provides for retroactivity.[10] And to the extent that there is any latent conflict, it is a function not of mathematical methodology but of legal interpretation, and I need not accept Mr. Herzog's interpretation of the legal effect of the contract. His assumption of the effect, even if erroneous, does not invalidate his methodology.

Finally, ENIT objects that Mr. Herzog's report does not comply with Fed. R. Civ. P. 26(a)(2)(B) because it contains no opinions and because it provides only "sparse" information about the only case in which Mr. Herzog has testified in the past four years. Rule 26 requires that each expert's report contain:

> a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in

---

[10] Only one and a half pages of the nine-page 1998 contract are translated into English; the full contract, in Italian, is attached to Mr. Herzog's report. I do not read Italian.

which the witness has testified as an expert at trial or by deposition within the preceding four years.

Mr. Herzog's report includes all of the required components. Rule 26 does not require the witness to include information about the court or administrative agency or the case number. Although I would prefer more information than the parties' names, failure to provide more information than this is not grounds for the drastic sanction of striking the entire report.

ENIT also argues that the report should stricken because it does not contains "opinions of any kind." ENIT appears to argue that Mr. Herzog's report does not contain an opinion because it consists of tables, not of text. However, on the first page of Mr. Herzog's report, he writes that the "total due Mr. Zic" is $649, 462.21. This is his opinion. On each page, he provides a total for his computation of damages for a given time period or under a specific contract, which also represents his opinion or conclusion. Though it would have been nice if he had included a paragraph, or even a sentence about what his conclusions were, it is not necessary. It is possible to ascertain from his report what Mr. Herzog believes Mr. Zic's damages to be, so I will not strike his report for failure to express an opinion.

V.

ENIT's Motion for Judgment on the pleadings is GRANTED with respect to Counts II, III, IV, V, VIII and IX; it is DENIED with respect to Counts VI and VII, and it is GRANTED IN PART with respect

to Count I.   ENIT's motion to strike Mr. Zic's first and second affirmative defenses to ENIT's counterclaim is GRANTED; its motion to strike the third affirmative defense is DENIED AS MOOT.   ENIT's motion to strike the expert report of Stanton Herzog is DENIED.

**ENTER ORDER:**

_Elaine E. Bucklo_
**Elaine E. Bucklo**
United States District Judge

Dated:   January 17, 2001

Copies have been mailed to:

Robert W. Fioretti
Fioretti & DesJardins, Ltd.
8 S. Michigan Avenue, #3400
Chicago, IL 60603

Allan E. Lapidus
Vedder Price Kaufman & Kammholz
222 N. LaSalle Street, #2600
Chicago, IL 60601

Attorneys for Plaintiff

Antonio DeBlasio
Gardner, Carton & Douglas
321 N. Clark Street, #3400
Chicago, IL 60610-4795

Attorney for Defendants